F I L E D
**United States Court of Appeals
Tenth Circuit**

**July 3, 2006**

**Elisabeth A. Shumaker
Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

TRAVIS EMANUEL BAILEY,

     Defendant - Appellant.

No. 04-6261
(W.D. Oklahoma)
(D.Ct. No. CR-03-233-R)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Pursuant to a plea agreement, which contained a waiver of appellate rights, Travis Bailey pled guilty to possession of a firearm by an unlawful user of a

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

controlled substance and was sentenced to 120 months imprisonment. He appeals his sentence, arguing the district court misapplied the guidelines, there was insufficient evidence supporting the enhancements to his sentence and his Sixth Amendment rights were violated pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004). The Government asserts, *inter alia*, that Bailey's appeal is precluded by his waiver of appellate rights in the plea agreement. Exercising jurisdiction under 18 U.S.C. § 1291, *see United States v. Hahn*, 359 F.3d 1315, 1322, 1324 (10th Cir. 2004) (en banc), we enforce Bailey's waiver of appellate rights with regard to his challenge to the district court's application of the guidelines and the sufficiency of the evidence supporting the enhancements to his sentence. Consequently, we dismiss that portion of his appeal. However, as to his *Blakely* argument, we conclude it is not precluded by his waiver. Nevertheless, we affirm his sentence, finding the Sixth Amendment error at sentencing harmless.

## I. Background

On December 10, 2001, the United States Marshal Service (USM) apprehended Jerome Barr, a fugitive, on property owned by Bailey located in Wanette, Oklahoma. The property consisted of at least sixty acres and contained a mobile home trailer where Bailey and his fiancé resided, a travel trailer where Doreena Travis and Darrell Sneed lived, a single-family house which Bailey was in the process of constructing (the unfinished house), and several outbuildings. Bailey consented to a search of the property. The USM discovered a clandestine

methamphetamine laboratory and numerous firearms. The USM informed the Bureau of Alcohol Tobacco and Firearms (ATF), whose agents conducted a further search of the property.

In the mobile home trailer, ATF agents found materials used in the manufacturing of methamphetamine, drug ledgers, over twenty-five firearms (some of which were loaded) and ammunition. In the unfinished house, where the suspected methamphetamine lab was located, agents discovered a one-gallon jar containing a light-green liquid, which was tested and identified as methamphetamine, and various items used in the manufacturing of methamphetamine. The next day, the agents obtained and executed a search warrant at the travel trailer.[1] There, they found six firearms (two of which were loaded), ammunition and approximately one-quarter pound of marijuana.

Later, in September 2003, ATF agents received information that explosions were occurring on or near Bailey's property. Consequently, ATF agents obtained another warrant to search Bailey's property to obtain evidence of the possession or manufacturing of improvised explosive devices. On September 30, 2003, they executed the warrant, discovering numerous firearms and ammunition, as well as marijuana, methamphetamine and other drug paraphernalia.

On October 20, 2003, a criminal complaint was filed against Bailey

---

[1] Although Bailey consented to the search of the entire property, because Travis owned the travel trailer, agents obtained a warrant to search it.

charging him with (1) aiding and abetting the attempted manufacture of methamphetamine in violation of 21 U.S.C. § 841(a) and 18 U.S.C. § 2(a) (Count 1) and (2) possession of a firearm (a Colt, Model Peacemaker, .22 caliber revolver)[2] in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) (Count 2).  Bailey was arrested two days later.  On November 12, 2003, Bailey was re-charged by information with possession of a firearm (the Colt revolver) by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). On December 3, 2003, pursuant to a plea agreement, Bailey pled guilty to the information and a presentence investigation report (PSIR) was prepared.

Section 2K2.1 of the United States Sentencing Guidelines, the guideline applicable to a violation of 18 U.S.C. § 922(g)(3), provides a cross-reference to USSG §2X1.1 if "the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense . . . ."  USSG §2K2.1(c)(1)(A).[3]  Section 2X1.1 applies to attempts, solicitations and

---

[2] This revolver was discovered in the master bedroom of the mobile home during the December 10, 2001 search.

[3] Because Bailey was sentenced pursuant to the 2001 edition of the United States Sentencing Guidelines Manual, all guideline citations refer to the 2001 edition, unless noted otherwise.

conspiracies and requires the court to apply "[t]he base offense level from the guideline for the substantive offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty."  USSG §2X1.1(a).  Applying the cross-reference to §2X1.1 contained in §2K2.1, the probation officer determined the substantive offense was a violation of 21 U.S.C. § 841(a)(1) (the manufacture of methamphetamine) and therefore applied its applicable guideline, USSG §2D1.1.  Based on a finding that the substantive offense involved 7,931.1988 kilograms of marijuana equivalent,[4] the probation officer concluded the base offense level was 34.  *See* USSG §2D1.1(c)(3) (assigning a base offense level of 34 for "[a]t least 3,000 KG but less than 10,000 KG of Marijuana. . .").  The probation officer then added two levels pursuant to §2D1.1(b)(1) because Bailey possessed dangerous weapons during the commission of the offense.  After applying a three-level downward

---

[4] The probation officer held Bailey accountable for the methamphetamine (3, 789.4059 grams) and marijuana (187 grams) found during the two searches of his property.  It also held him responsible for methamphetamine he sold to Doreena Travis (six grams) and Darrell Sneed (170.10 grams).  Because both marijuana and methamphetamine were involved, the probation officer converted the amount of methamphetamine to its marijuana equivalent.  *See* §2D1.1, comment. (n.10) ("The Drug Equivalency Tables also provide a means for combining differing controlled substances to obtain a single offense level.  In each case, convert each of the drugs to its marijuana equivalent, add the quantities, and look up the total in the Drug Quantity Table to obtain the combined offense level.").  At sentencing, in proving drug quantity, the Government only established the existence of the one gallon jar of methamphetamine (3,785 grams) found in the unfinished house on December 10, 2001, because this amount alone supported an offense level of 34.

adjustment for acceptance of responsibility (*see* USSG §3E1.1), the probation officer determined the total offense level was 33.

Based on his prior convictions, the probation officer concluded Bailey's criminal history score was II. However, because Bailey was serving two one-year suspended state court sentences at the time he committed the instant offense, the officer added two points, resulting in a criminal history category of III. *See* USSG §4A1.1(d) ("Add **2** points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status."). Based on a total offense level of 33 and a criminal history category of III, the probation officer calculated the guideline range as 135 to 168 months imprisonment. However, because the statutory maximum was ten years, *see* 18 U.S.C. § 924(a)(2), the probation officer concluded the guideline sentence was 120 months.

Bailey filed numerous objections to the PSIR. In relevant part, he argued (1) he should not be held accountable for any quantity of drugs, (2) the application of the cross-reference to USSG §2X1.1 contained in USSG §2K2.1 was improper, and (3) the gun enhancement was inappropriately applied. Additionally, both parties filed sentencing memoranda regarding the impact of *Blakely*.[5]

_____

[5] In *Blakely*, the Washington state court enhanced the defendant's sentence based on its finding that the defendant acted with "deliberate cruelty," a fact neither admitted by

-6-

On August 10, 2004, Bailey was sentenced. At sentencing, the Government offered the testimony of ATF Agent Timothy Kelly in response to Bailey's objections to the PSIR. Although it struck two paragraphs of the PSIR (which did not affect the probation officer's sentencing calculations), the court overruled the remainder of Bailey's objections, presumed the guidelines were constitutional and sentenced Bailey to 120 months imprisonment. However, it did provide an alternative sentence of 120 months in the event the guidelines were found to be unconstitutional. It concluded: "Given [Bailey's] criminal history and the weapons and methamphetamine involved in this case, I think that is an appropriate sentence either under the guidelines or assuming that they are unconstitutional." (Sentencing Tr. at 40.) This appeal followed.

## II. Discussion

On appeal, Bailey challenges his sentence arguing (1) the application of the cross-reference contained in §2K2.1 was improper, (2) the imposition of the weapon enhancement was inappropriate because there was no evidence

---

the defendant nor proven to a jury beyond a reasonable doubt. 542 U.S. at 300. Even though the defendant's sentence did not exceed the statutory maximum contained in his offense of conviction, the Supreme Court invalidated it. *Id.* at 303-05. In doing so, it applied its decision in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") but clarified that "the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at 303 (quotation marks and emphasis omitted).

demonstrating any of the firearms found in the mobile home were possessed or used in connection with any illegal activity, (3) the Government failed to present reliable evidence that the one-gallon jar of light-green liquid was methamphetamine as opposed to waste water, and (4) he was sentenced in violation of the Sixth Amendment as defined in *Blakely*. In response, the Government argues Bailey waived his right to appeal his sentence in the plea agreement. It contends we should enforce the waiver and dismiss his appeal. In the event the appellate waiver is held unenforceable, the Government asserts the cross-reference was correctly applied and there was more than sufficient evidence supporting the weapon enhancement and the court's drug quantity determination. The Government also argues *Blakely* has not been extended to the federal sentencing guidelines.

We first address whether Bailey's appeal is precluded by his waiver of appellate rights. For ease of reference, we will refer to Bailey's first three arguments as arguments alleging the district court misapplied the guidelines and there was insufficient evidence supporting the enhancements to his sentence.

A. Waiver of Appellate Rights

In resolving appeals brought by defendants who have waived their appellate rights in a plea agreement, we consider: "(1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing

the waiver would result in a miscarriage of justice . . . ." *Hahn*, 359 F.3d at 1325.

### 1. Scope of Waiver

We narrowly construe the scope of an appellate waiver and any ambiguities will be read against the government and in favor of the defendant's appellate rights. *Id.* The plea agreement in this case contained the following waiver of appellate rights:

> [D]efendant in exchange for the promises and concessions made by the United States in this plea agreement, knowingly and voluntarily waives his right to:
>
> a. Appeal or collaterally challenge his guilty plea and any other aspect of his conviction, including but not limited to any rulings on pretrial suppression motions or any other pretrial dispositions of motions and issues;
>
> b. Appeal, collaterally challenge, or move to modify under 18 U.S.C. § 3582(c)(2) or some other ground, his sentence as imposed by the Court and the manner in which the sentence is determined, provided the sentence is within or below the applicable guideline range determined by the Court to apply to this case. Defendant acknowledges that this waiver remains in full effect and is enforceable, even if the Court rejects one or more of the positions of the United States or defendant set forth in paragraph 7 concerning the application of the U.S. Sentencing Guidelines[;][6]
>
> c. It is provided that (i) defendant specifically does not waive the right to appeal an upward departure from the sentencing guideline range determined by the Court to apply to this case, and (ii) his waiver of rights to appeal and to bring collateral challenges shall not apply to appeals or challenges based on changes in the law reflected in Tenth Circuit or Supreme Court cases decided after the date of this

---

[6] In Paragraph 7, the parties agreed Bailey should receive a downward adjustment under USSG §3E1.1 for acceptance of responsibility.

agreement that are held by the Tenth Circuit or Supreme Court to have retroactive effect.

(ROA, Vol. 1, Doc. 16 at 10-11.)

Based on this language, Bailey agreed to a broad waiver of appellate rights, limiting his right to appeal his sentence to two specific circumstances: (1) the imposition of an upward departure, and (2) a change in law held to have retroactive effect. None of Bailey's arguments on appeal concern an upward departure; in fact, the district court did not depart upward from the guideline range. Moreover, Bailey's arguments alleging the district court misapplied the guidelines and there was insufficient evidence supporting the enhancements to his sentence are not based on a change in law held to have retroactive effect. Therefore, these arguments are within the scope of the appellate waiver. However, Bailey's *Blakely* argument, which we analyze in light of the Supreme Court's *Booker* decision,[7] concerns a "change[] in the law . . . decided after the date of th[e] agreement that [was] held by the . . . Supreme Court to have retroactive effect." *See United States v. Booker*, 543 U.S. 220, 268 (2005) ("[W]e

_____

[7] In *Booker*, the Supreme Court extended its holding in *Blakely* to the federal sentencing guidelines, holding that the Sixth Amendment requires "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict [to] be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at 244. To remedy the constitutional infirmity of the guidelines, *Booker* invalidated their mandatory nature, requiring the district court to consult them in an advisory fashion. *Id.* at 245-46 (severing and excising 18 U.S.C. §§ 3553(b)(1), 3742(e)).

must apply today's holdings--both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act--to all cases on direct review.");[8] *see also United States v. Taylor*, 413 F.3d 1146, 1153 (10th Cir. 2005) (construing similar language in plea agreement to allow appeal of sentence under *Booker*). Therefore, Bailey has not waived his right to challenge his sentence under *Booker*.

We now consider the remaining *Hahn* factors to determine whether we should enforce Bailey's waiver of appellate rights as to his arguments concerning the district court's application of the guidelines and the sufficiency of the evidence supporting the enhancements to his sentence.

2.  Knowing and Voluntary

In determining whether a defendant knowingly and voluntarily waived his appellate rights, we look to two factors: (1) whether the plea agreement states the defendant entered into the agreement knowingly and voluntarily, and (2) whether an adequate Rule 11 colloquy occurred between the defendant and the court. *Hahn*, 359 F.3d at 1325.  Both conditions are satisfied in this case.  The waiver of appellate rights section of the plea agreement informs Bailey of his right to appeal the judgment and sentence imposed by the district court.  It also states he

---

[8] While "*Booker* does not apply retroactively to criminal cases that became final before its effective date of January 12, 2005," this is not such a case. *United States v. Bellamy*, 411 F.3d 1182, 1184, 1188 (10th Cir. 2005) (holding that "like *Blakely*, *Booker* does not apply retroactively on collateral review").

"knowingly and voluntarily" waives that right (unless the court imposes an upward departure or there is a change in law held to have retroactive effect). (ROA, Vol. 1, Doc. 16 at 10.) At his change of plea hearing, the court explained to Bailey the rights he was waiving by pleading guilty, including the right to appeal his sentence. It also asked Bailey whether he understood the waiver; Bailey stated he did. Therefore, we conclude Bailey's waiver of appellate rights was knowing and voluntary.

### 3. Miscarriage of Justice

There are at least four situations in which a miscarriage of justice may occur: (1) the district court relied upon an impermissible factor such as race, (2) ineffective assistance of counsel in the negotiation of the waiver renders it invalid, (3) the sentence exceeds the statutory maximum, or (4) the waiver is otherwise unlawful. *Hahn*, 359 F.3d at 1327. Clearly, the first three situations are not at issue here—the district court did not rely on an impermissible factor, there is no claim defense counsel was ineffective in negotiating the waiver,[9] and

---

[9] Bailey was represented by Larry Speer during the negotiation of the plea agreement and at the change of plea hearing. Sentencing was set for April 29, 2004; Mr. Speer failed to appear. A bench warrant was issued for his arrest. On May 3, 2004, current counsel was appointed to represent Bailey. Subsequently, Mr. Speer was held in contempt. Despite Mr. Speer's failure to appear for sentencing, there is no indication that his previous representation of Bailey, including the negotiation of the plea agreement, was ineffective. Indeed, at the change of plea hearing, in response to the court, Bailey stated he was satisfied with the services of his attorney and believed Speer had done all he could to counsel and assist him in the matter.

Bailey's sentence did not exceed the statutory maximum.[10]  Thus, the only issue

under the miscarriage of justice prong is whether Bailey's waiver was "otherwise

unlawful."  "For a waiver to be otherwise unlawful, the error must seriously affect

the fairness, integrity or public reputation of judicial proceedings, as that test was

employed in *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123

L.Ed.2d 508 (1993)."  *United States v. Green*, 405 F.3d 1180, 1194 (10th Cir.

2005) (quotations omitted).

Bailey argues that to enforce the waiver and deny him his day in court

would be a miscarriage of justice because a successful appeal would reduce his

sentence by at least eighty-five percent.  He contends that absent the district

court's sentencing errors, he would only have been exposed to a guideline range

of twelve to eighteen months.  The essence of Bailey's complaint is that although

he pled guilty to possession of a firearm by an unlawful user of a controlled

substance in violation of 18 U.S.C. § 922(g)(3), he was punished for

manufacturing methamphetamine and possessing a firearm in furtherance of a

drug trafficking crime, both of which were initially alleged against him in the

---

[10] "'[S]tatutory maximum' under the *Hahn* miscarriage of justice inquiry refers to the statute of conviction," not as the term is defined by *Blakely* (*see supra* n.5).  *United States v. Porter*, 405 F.3d 1136, 1144 (10th Cir. 2005).  Here, the penalty provision to which Bailey pled was 18 U.S.C. § 924(a)(2), which carries a ten year maximum term of imprisonment.  Bailey's sentence does not exceed that maximum.  In fact, although Bailey's guideline range was 135 to 168 months imprisonment, his statute of conviction limited his sentence to 120 months.

-13-

criminal complaint but later dismissed. However, by pleading guilty to violating § 922(g)(3), Bailey avoided the statutory maximum of twenty years imprisonment for the manufacturing of methamphetamine[11] and the consecutive mandatory minimum five-year term of imprisonment required for possessing a firearm in furtherance of a drug trafficking crime.[12] He also received the benefit of a downward adjustment for acceptance of responsibility. Therefore, we cannot conclude that enforcement of the waiver in this case—where Bailey, the Government and society at large have all benefitted—would result in a miscarriage of justice. *See Hahn*, 359 F.3d at 1318 ("[W]e generally enforce plea agreements and their concomitant waivers of appellate rights . . . because public policy strongly supports such waivers as they benefit defendants, the government, and society at large.").

Based on the above, we conclude Bailey's waiver of appellate rights is enforceable with respect to his arguments that the district court misapplied the guidelines and there was insufficient evidence supporting the enhancements to his

---

[11] 21 U.S.C. § 841(b)(1)(C) provides a maximum term of twenty years imprisonment for the manufacturing of an indeterminate amount of methamphetamine, a Schedule II controlled substance.

[12] The criminal complaint sought to penalize Bailey for possession of a firearm in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c)(1)(A)(ii). This subsection requires a mandatory minimum sentence of seven years if the firearm was brandished. However, even if the firearm was not brandished, Bailey was facing a consecutive five-year mandatory minimum term of imprisonment had he been convicted under the criminal complaint. *See* 18 U.S.C. § 924(c)(1)(A)(i).

sentence. Therefore, we dismiss his appeal as to these arguments. However, because his waiver does not extend to his *Blakely/Booker* argument, we turn to it now.

B. *Blakely/Booker*

Bailey argues he was sentenced in violation of the Sixth Amendment as interpreted by *Blakely/Booker* based on the district court's factual findings which led to the application of the cross-reference to USSG §2X1.1 contained in USSG §2K2.1, the application of a base offense level of 34, and the imposition of the USSG §2D1.1(b)(1) weapons enhancement. He also complains his Sixth Amendment rights were violated when the district court added two points to his criminal history based on its finding that he committed the current offense while serving two one-year suspended state court sentences. Although the imposition of two points in the calculation of his criminal history category does not implicate the Sixth Amendment based on *Blakely* and *Booker's* prior conviction exception, the remainder of Bailey's complaints constitute constitutional *Booker* error. *See United States v. Gonzalez-Huerta*, 403 F.3d 727, 731 (10th Cir.) (en banc) (constitutional *Booker* error occurs when the district court relies upon judge-found facts (other than a prior conviction) to enhance a defendant's sentence mandatorily), *cert. denied*, 126 S.Ct. 495 (2005).

Here, unlike many of the cases currently on appeal, Bailey raised *Blakely* in the district court, arguing it applied to the federal sentencing guidelines.

-15-

Therefore, our inquiry is whether the court's constitutional error at sentencing was harmless under FED. R. CRIM. P. 52(a). *United States v. Lang*, 405 F.3d 1060, 1064 (10th Cir. 2005). Rule 52(a) states: "Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." The government bears the burden of demonstrating the error was harmless and in cases involving constitutional error, must do so beyond a reasonable doubt. *Lang*, 405 F.3d at 1065.

In this case, we have little difficulty in concluding that the constitutional error at sentencing was harmless based on the district court's imposition of the same sentence in the event the guidelines were found to be unconstitutional.[13] Therefore, unlike in *United States v. Labastida-Segura*, we are not placed in a "zone of speculation or conjecture" as to whether the district court would impose

_____

[13] The Government's brief in this case was filed prior to *Booker*. Therefore, in response to Bailey's *Blakely* argument, the Government asserted *Blakely* did not apply to the federal sentencing guidelines. Neither party sought to file supplemental briefing concerning *Booker*, nor did we order such filing. Thus, the Government has not attempted to satisfy its burden that the constitutional *Booker* error at sentencing was harmless. However, this failure is not fatal. We have discretion to initiate harmless error review in an appropriate case. *United States v. Torrez-Ortega*, 184 F.3d 1128, 1136 (10th Cir. 1999). In exercising this discretion, we should consider: "(1) the length and complexity of the record, (2) whether the harmlessness of the errors is certain or debatable; and (3) whether a reversal would result in protracted, costly, and futile proceedings in the district court." *United States v. Samaniego,* 187 F.3d 1222, 1225 & n.2 (10th Cir. 1999) (questioning whether third factor "contributes to a court's decision in determining whether to exercise its discretion to *sua sponte* address the issue of harmlessness"). This case is an appropriate case to exercise that discretion—the record is small and not complex and the harmlessness of the *Booker* error, as we will address, is not debatable.

the same sentence under a post-*Booker* sentencing scheme; we know it would.

396 F.3d 1140, 1143 (10th Cir. 2005). Additionally, although the district court

did not cite to 18 U.S.C. § 3553(a)[14] when imposing the alternative sentence, the

court's remarks at sentencing clearly indicate its belief that a 120 month sentence

was appropriate given Bailey's criminal history and the circumstances of the case.

We addressed that issue in *United States v. Corchado*, 427 F.3d 815 (10th Cir.),

*cert. denied*, 126 S.Ct. 1811 (2005). There, in a non-constitutional *Booker* case,

we found remand was unncessary because we knew what the district court would

do because it had imposed an alternative sentence in the event the guidelines were

---

[14] Section 3553(a) states in relevant part:

(a) **Factors to be considered in imposing a sentence**.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;

> (C) to protect the public from further crimes of the defendant; and

> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . .

-17-

found unconstitutional.  We said:

> Although the district court did not specify that it was applying the sentencing methodology suggested in *Booker*-namely consultation of the advisory Guidelines and the factors listed in 18 U.S.C. § 3553(a)-we know that the court consulted the Guidelines and adopted the findings in the PSR, which analyzed several of the factors set forth in 18 U.S.C. § 3553(a).  *See United States v. Rines,* 419 F.3d 1104, 1107 (10th Cir. 2005) (noting that we do not require the district court to "march through § 3553(a)'s sentencing factors" before we uphold a sentence).  Because we are confident that the district court would impose the same sentence upon remand, we affirm the district court's decision.

*Id. at 821.*

Similarly, in *United States v. Cornelio-Pena*, the district court imposed an alternative sentence in the event the guidelines were held unconstitutional.  435 F.3d 1279 (10th Cir), *cert. denied*, 126 S.Ct. 2366 (2006).  In imposing the alternative sentence (which was the same sentence imposed under the mandatory scheme), the court referred to § 3553(a) but did not expressly state any of its factors.  On appeal, we concluded the non-constitutional *Booker* error at sentencing was harmless.  In doing so, we stated:

> In *United States v. Serrano-Dominguez*, we held non-constitutional *Booker* error was harmless when the district court imposed an alternative sentence.  406 F.3d 1221, 1223-24 (10th Cir. 2005).  Although the district court in *Serrano-Dominguez* explicitly applied the factors in 18 U.S.C. § 3553(a) as suggested by the Court in *Booker*, we have subsequently held that a district court need not explicitly examine each of the § 3553(a) factors so long as the court consults the Guidelines and the Presentence Investigation Report ("PSR"), which analyzes several of the § 3553(a) factors.  *Corchado,* 427 F.3d at 821.  The district court did not specifically    discuss the § 3553(a) factors in this case.  It did, however, consult the

-18-

Guidelines and the PSR and consider Cornelio-Pena's motion for a downward departure. Thus, the district court examined several of the § 3553(a) factors in imposing its alternative sentence. Because we are confident Cornelio-Pena would receive the same sentence on remand, the district court's error was harmless.

*Id*. at 1289.

In this case, although the district court did not expressly mention § 3553(a) when it imposed the alternative sentence, it apparently considered several of its § 3553(a) factors when it said a 120-month sentence was appropriate given Bailey's criminal history and the circumstances of the case, namely, the weapons and methamphetamine involved in the case. *See* § 3553(a)(1). It also consulted the guidelines and the PSR. We are satisfied that any constitutional *Booker* error at Bailey's sentencing was harmless beyond a reasonable doubt.

### III. Conclusion

We enforce Bailey's waiver of appellate rights as to his arguments that the district court misapplied the guidelines and the evidence was insufficient to support the enhancements to his sentence. Thus, we DISMISS his appeal as to those arguments. We further conclude Bailey did not waive his right to challenge his sentence under *Booker*. Nonetheless, we find the *Booker* error at sentencing was harmless. Bailey's sentence is AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

-19-