**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 23, 2009

No. 08-60472

Charles R. Fulbruge III
Clerk

JERMILLE JOHNSON

Plaintiff - Appellant

v.

TCB CONSTRUCTION COMPANY INC; ODIS TURNER

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:05-CV-370

Before WIENER, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

This case concerns claims brought by Jermille Johnson against his former employer, TCB Construction Co., Inc. ("TCB"), and his former supervisor, Odis Turner, for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2-2000e-3. The district court granted summary judgment in favor of TCB and Turner. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## FACTS AND PROCEEDINGS

TCB is a construction firm that engages in various projects in Southern Mississippi, including highway construction and repair. At all relevant times, Turner was a supervisor on a TCB job site in Harrison County, Mississippi. On October 16, 2003, TCB hired Johnson, a black male, as a "laborer" at its "entering rate" of $8.00 per hour and assigned him to the Harrison County site. At first, Johnson's tasks were limited to picking up sticks and roots, although he later operated packer and roller machines. During Johnson's employment, the 20-plus workers classified as laborers earned between $8.00 and $9.00 per hour, and included black and non-black employees at every wage increment.

TCB officials, including owner Jennifer Fagan and manager Harry Coyne, testified that the machinery operated by Johnson was light-duty, was also operated by other laborers, and was different from heavy machinery such as bulldozers, graders, or trackhoes. These latter machines were operated by higher-skilled, and higher-paid "operators," and not by laborers. Johnson offers no evidence that he operated the heavy machines, that their use was not marked by higher levels of skill or experience, or that he was qualified for such work.

At various times after starting his work with roller and packer machines, Johnson asked for a raise. Turner refused, citing Johnson's short tenure at TCB. According to Johnson, after one such refusal by Turner while he was distributing Johnson's paycheck, Turner threw the paycheck and when Johnson bent down to pick it up, Turner said "[j]ust like a damn nigger." At another time, Johnson claims that Turner called him "ugly" and "an old hermit." At some point late in Johnson's tenure at the Harrison County site, he was taken off machine work because, according to Coyne, he complained "he wasn't making enough money."

2

On April 15, 2004, Johnson filed an EEOC charge, alleging that he was paid less than non-black workers and subjected to a racially hostile environment. Three weeks later, he was transferred to a job site in Stone County, Mississippi. The record does not reveal how far the old site was from Johnson's home, but the new site was 30 to 35 minutes away. Johnson continued as a laborer with the same pay and hours. He did not operate machines, although he admits that he never asked to do so. There is a record discrepancy between Coyne's claim that he was unaware of the EEOC charge before the transfer, and Fagan's testimony that her practice would have been to contact Coyne on receiving the charge. In any event, TCB claims that it transferred Johnson to resolve his conflict with Turner. Johnson did not complain about his transfer at the time, and although he no longer used machines, he admits that this "really wasn't a big old factor." He testified that it was "just the idea" that he no longer could that upset him.

On June 18, 2004, Johnson was laid off by TCB. At the time, two other workers—one black and one white, and neither of whom had filed an EEOC charge—were also laid off. According to Fagan and Coyne, Johnson's layoff was approved by Coyne due to the "seasonal and sporadic" nature of the construction business and in connection with a performance ranking by his Stone County supervisor that put the three workers at the top of the layoff list. Johnson does not rebut this description of the business nor does he challenge the rankings.

Johnson claims that after filing his EEOC charge but before his transfer, he was required to go to the bathroom in the woods, and could not use the office facilities. He offers no racial or EEOC charge-based comparison to others on the use of restrooms—claiming only that "everyone else can go up to the restroom." Johnson also offers evidence that Turner often used the word "nigger," including

3

once in talking to Johnson—in the paycheck incident described above—and again in talking to another worker about Johnson. One of Johnson's co-workers also claims that Turner once referred to a black woman as a "typical nigger."

After his layoff, Johnson filed an amended charge with the EEOC to add a retaliation claim. On March 11, 2005, the EEOC found no cause to proceed on the disparate pay and hostile work environment claims, but that "there is reason to determine that reprisal was at least a motivating factor" in the transfer and layoff. The EEOC proposed conciliation, but nothing came of its efforts.

Johnson filed this action on June 9, 2005, raising claims of disparate pay, hostile work environment, and retaliation under Title VII, and a state law claim of intentional infliction of emotional distress. On November 6, 2006, the district court granted summary judgment in favor of Turner on the Title VII claims, finding that he cannot be personally liable thereunder. The court then granted summary judgment in favor of TCB on the disparate pay and hostile work environment claims, and in favor of Turner and TCB on the emotional distress claim.[1] It held the retaliation claims in abeyance subject to further discovery and argument. On a motion for reconsideration, the court vacated its November 6, 2006 order. Then, on April 24, 2008—after more discovery and briefing—the district court essentially reinstated its prior grant of summary judgment in favor of Turner and TCB, but extended it to include the retaliation claims as well.

The district court rejected Johnson's disparate pay claim, finding that he failed "to show that similarly situated white laborers were paid more." Although it noted the pay disparity between Johnson and those classified as operators, the

---

[1] Johnson does not appeal his emotional distress claim.

4

court found no evidence that the distinction was arbitrary as between operators, who ran heavy machinery, and laborers, who did not. The court also found that Johnson could not win on his hostile work environment claim because his only personal evidence was a reference by Turner to him as a "damn nigger." Though certainly offensive, the court found this evidence insufficient under the "severe or pervasive" test. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quotation omitted). On retaliation, the court found that the transfer was not legally adverse because it was, at most, inconvenient, while the layoff, though adverse, was a joint layoff with two others in a cyclical process common to the industry.

## STANDARD OF REVIEW

This court reviews grants of summary judgment *de novo*. *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Although doubts and reasonable inferences must be resolved in favor of the nonmoving party, the nonmovant's conclusory allegations and unsubstantiated assertions will not defeat summary judgment." *Garza-Trevino v. New England Fin.*, No. 08-50507, 2009 WL 382163 (5th Cir. Feb. 16, 2009) (per curiam) (unpublished) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

## DISCUSSION

As an initial matter, although the parties do not address the issue in much detail, Johnson cannot recover under Title VII against Turner in his individual capacity. "Only 'employers,' not individuals acting in their individual capacity

who do not otherwise meet the definition of 'employers,' can be liable under [T]itle VII." *Grant v. Lone Star Co.*, 21 F.3d 649, 652 (5th Cir. 1994). With this resolved, we now devote the rest of our opinion to the question of TCB's liability.

## *Disparate Pay*

Under the *McDonnell Douglas* framework for discrimination cases: (1) the plaintiff must first establish a prima facie case of discrimination, and if he does, (2) the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for its action, and if it does, (3) the plaintiff must offer evidence that the proffered reason is a pretext for discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). "To establish a prima facie case of racial discrimination with respect to compensation, the plaintiff must show that he was paid less than a member of a different race was paid for work requiring substantially the same responsibility." *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. Unit A 1981). Johnson must show that those workers to whom he compares himself were "performing substantially the same job." *Uviedo v. Steves Sash & Door Co.*, 738 F.2d 1425, 1431 (5th Cir. 1984).

As to fellow laborers, Johnson establishes a prima facie case in that there were non-black workers earning more than Johnson. However, he fails to show that TCB's reasons for such pay were pretext. Fagan testified that Johnson was paid "the entering rate" for laborers, while Turner testified that Johnson's work was "no different than" that of other laborers and that he "had not been there long enough" for a raise. In response, Johnson offers only general assertions on his advancement to work on machines. He offers no comparative evidence with any other laborer. Moreover, it is undisputed that there were non-black laborers

making the same wage as Johnson as well as black laborers making more. Thus, Johnson cannot prevail on a disparate pay claim vis-a-vis his fellow laborers.

Johnson also argues that he was paid less than non-black operators. As to that claim, the issue is not so much TCB's reasons for paying operators more but whether Johnson's work and that of the operators was "substantially the same job"—*i.e.*, whether he has a prima facie case. *Uviedo*, 738 F.2d at 1431. Johnson offers no such evidence. TCB operators ran heavy machinery such as bulldozers, graders, and trackhoes. There is no evidence that Johnson operated this machinery or was qualified to do so. Johnson's attempt to compare his job to an operator's for disparate pay purposes fails. *See Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (noting that disparate treatment must be "under nearly identical circumstances" (internal quotation marks omitted)).

## *Hostile Work Environment*

Turning to the hostile work environment claim, there is no doubt that the alleged comments by Turner are offensive and that those, along with his other alleged instances of boorish behavior, if true, would cause us to question the wisdom of Turner's retention by TCB. Nevertheless, Turner's actions vis-a-vis Johnson do not rise to the level required for employer liability under Title VII.

For hostile work environment, a plaintiff must show: (1) he is a member of a protected class, (2) he suffered unwelcome harassment, (3) the harassment was based on race, (4) the harassment affected his job, and (5) the employer was responsible. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). In our analysis, we must consider "all the circumstances," including "the frequency of the . . . conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance." *Harris,* 510 U.S. at 23. The "mere utterance of an . . . epithet which engenders offensive feelings" is not enough, *id.* at 21 (quotation omitted) (omission in original), nor are "isolated incidents (unless extremely serious)," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). And, "'second-hand' harassment, although relevant, [is] less objectionable than harassment directed at the plaintiff." *Moser v. Ind. Dep't of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005).

In support of his hostile work environment claim, Johnson offers several pieces of evidence that, though highly objectionable, do not meet the legal test. First, he offers no evidence that either Turner's allegedly forcing him to go to the bathroom in the woods or his statement that Johnson was "ugly" and "an old hermit" was based on race. *Ramsey*, 286 F.3d at 268. Second, although Turner's alleged comment to Johnson that he was just "like a damn nigger" in asking for a raise is repulsive, it is isolated and Johnson has offered no evidence concerning its objective effect on his "work performance." *Harris*, 510 U.S. at 23. Finally, although Johnson offers evidence of Turner's frequent use of the term "nigger," these comments were not uttered in Johnson's presence nor is there evidence that they affected his job. Johnson has therefore failed to offer enough evidence that he suffered from a racially hostile work environment under Title VII.

### *Retaliation*

To establish a claim of unlawful Title VII retaliation, Johnson must first demonstrate a prima facie case as follows: "(1) that he engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a casual [sic] link existed between the protected activity and the adverse employment action." *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir. 2007).

Assuming Johnson can establish a prima facie case, the burden of production would then shift to TCB to articulate a legitimate, non-discriminatory reason for its action(s), and, if it does so, the burden returns to, and ultimately rests with, Johnson to show pretext, per the usual *McDonnell Douglas* framework. *Long v. Eastfield Coll.*, 88 F.3d 300, 305 (5th Cir. 1996).

Johnson meets the first prima facie prong—*i.e.*, protected activity—as to both his transfer and layoff, and the second prong—*i.e.*, adverse action—as to his layoff. Nevertheless, we agree with the district court—which we commend for its respectful and deliberate treatment of the relevant retaliation issues—in its findings that (1) Johnson's transfer was not an adverse employment action for prima facie purposes, and (2) Johnson offered insufficient evidence of pretext to rebut TCB's reasons of a group layoff for cyclical business needs.

Turning first to the transfer, as an adverse employment action, Johnson is correct that the Supreme Court's standard for retaliation is broader than for discrimination, in that such actions are not limited to tangible employment acts. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006) (observing that "Title VII's substantive provision and its anti-retaliation provision are not coterminous"). Rather, an adverse action is one that "might have dissuaded a reasonable worker from making . . . a charge of discrimination." *Id.* at 68 (quotations omitted). Even under this more lenient standard, however, Johnson has not offered enough evidence to show that his transfer was an adverse action.

First, Johnson's new post was for the same hours and rate of pay. Second, although the new job site was 30 or 35 minutes from Johnson's home, there is no evidence on the distance to the old site or that Johnson's new commute was unreasonable. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir.

1998) (refusing to treat approximate half-hour commute increase as an "adverse employment action"). Finally, although Johnson cites *Burlington Northern* to support his claim, that case is distinguishable. Like Johnson, the plaintiff in *Burlington Northern* based her claim on a reassignment to less desirable duties. Yet, in *Burlington Northern*, the Court stated that "reassignment of job duties is not automatically actionable" and that it "depends upon the circumstances." 548 U.S. at 71. There, the Court observed that there was

> considerable evidence that the track labor duties were . . . more arduous and dirtier; that the forklift operator position required more qualifications, which is an indication of prestige; and that the forklift operator position was objectively considered a better job and the male employees resented White for occupying it.

*Id.* (internal quotations omitted). No such facts are present here. Johnson's pre-transfer removal from light duty machines in response to his request for higher pay may suggest prestige. However, such an inference is not enough when balanced with the fact that Johnson (1) did not complain about the transfer, (2) testified that "not using equipment really wasn't a big old factor" but it was "just the idea," and (3) offers no evidence that the transfer precluded him from using machines; in fact, he admitted that he never asked his new supervisor if he could do so.[2]

Turning to the layoff, regardless of whether or not Johnson has a prima facie case, the reasons given by TCB cannot be shown to be pretext. TCB laid off Johnson along with two others, neither of whom filed an EEOC charge. In

---

[2] Because we conclude that Johnson has not demonstrated the adverse action element necessary for a prima facie case of retaliation, we do not reach his argument that his alleged prima facie case should otherwise be subjected to a "mixed-motive" analysis. Johnson does not ask us to apply the "mixed-motive" analysis to his layoff-based retaliation claim.

addition, TCB officials testified—without any challenge from Johnson—that the cyclical nature of the construction business resulted in periodic layoffs. Finally, TCB presented an uncontroverted, performance-based layoff ranking roster through which Johnson was included in the layoff. The only evidence Johnson offers for pretext is the timing between his charge and layoff and the discrepancy over whether Coyne was aware of the charge when he approved the layoff.

As this court observed in *McCoy v. City of Shreveport*, although temporal proximity between the protected activity and an adverse employment action may be enough of a "causal connection" to establish a prima facie case, "once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." 492 F.3d 551, 562 (5th Cir. 2007) (per curiam) (quotation omitted). Given TCB's unchallenged explanation that the layoff was a three-person layoff due to a periodic need to adjust its workforce, Johnson's only remaining argument is that the dispute over Coyne's knowledge is enough to show pretext. The Supreme Court has held that "proof that the defendant's explanation is unworthy of credence" can establish pretext. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000). Yet, even if there is a dispute as to Coyne's knowledge, Johnson still has not offered evidence to rebut the reasons offered for his layoff. "'To raise an inference of pretext in the face of the employer's legitimate, non[retaliatory] explanation, the plaintiff must undermine the employer's credibility to the point that a reasonable jury could not find in its favor.'" *Staten v. New Palace Casino, LLC*, 187 F. App'x 350, 361 (5th Cir. 2006) (per curiam) (unpublished) (quoting *Jaramillo v. Col. Judicial Dep't*, 427 F.3d 1303, 1310 (10th Cir. 2005) (per

curiam)) (alteration in original). The dispute between Coyne's recollection and Fagan's testimony as to her usual practice is simply not enough. Thus, pretext cannot be shown, and the layoff is therefore not actionable as illegal retaliation.

## CONCLUSION

For the reasons described above, we AFFIRM the district court's grant of summary judgment in favor of TCB and Turner.