# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 4, 2012

Lyle W. Cayce
Clerk

No. 10-31105

TRICIA WHITE,

Plaintiff-Appellant

v.

GOVERNMENT EMPLOYEES INSURANCE COMPANY,
also known as GEICO,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
(2:09-CV-2747)

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

This is an appeal from a grant of an employer's motion for summary judgment, rejecting claims of racial discrimination in violation of Title VII.[1] We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] 42 U.S.C. § 2000e *et seq.*

No. 10-31105

**I.**

Tricia White, an African-American female, was hired by Government Employees Insurance Co. ("GEICO") as a Telephone Claims Representative Trainee in GEICO's regional office in Macon, Georgia in 1997. White's sister, Tiffany White, was also hired at that time, as a Claims Service Representative. Approximately seven years later, GEICO transferred White to the company's Louisiana claims unit in Metairie, Louisiana and promoted her to the position of Telephone Claims Representative Supervisor ("TCR-1 Supervisor"). At that time, White's sister Tiffany also transferred to the Louisiana claims unit, accepting a Claims Unit Examiner position. Later, Tiffany White was promoted to a TCR-1 Supervisor position in the Louisiana claims unit. Tiffany White then returned to Georgia to work as a TCR-1 Supervisor in the Macon regional office.

In March 2008, GEICO promoted White to the position of Manager, Liability Claims ("Continuing Unit Manager"). Around that time, White's sister Tiffany was awarded the TCR-2 Supervisor position in GEICO's Louisiana claims unit and relocated from the Macon office to the claims office in Metairie, Louisiana. In May, GEICO notified staff members of the Metairie claims office that the office would be closed and its operations relocated to the regional office in Macon, Georgia. The next month, GEICO advised White that she would be transferred from her position as Continuing Unit Manager in GEICO's Louisiana unit to a Continuing Unit Manager position in the Georgia unit. GEICO told White that she was being transferred so that she and her sister would not work in the same unit, because of GEICO's conflicts policy. White soon transferred to the Continuing Unit Manager position in the Georgia unit. She later assumed responsibility for the Alabama claims unit as well.

White testified that while she was employed in GEICO's Metairie claims office, she overheard the branch manager, Gene Allgood, refer to an African-American customer as a "nigger." White reported this to GEICO. When GEICO

investigated, Allgood denied referring to the customer in that manner, and all witnesses other than White stated that Allgood did not do so. GEICO took no further action. White also testified that another African-American employee, Cynthia Johnson, told her of an incident during which some white paint fell on or near Johnson and Allgood commented that he "always knew that [Johnson] wanted to be a white female." In addition, White and her sister have affirmed that Allgood referred to the Metairie office on many occasions as "ghetto" or a "FEMA trailer."

White claims that while she worked in the Metairie claims office, she was harassed by co-workers and supervisors on several occasions. In addition to the incidents just described, she presented evidence that Allgood excluded her from some meetings; that a co-worker, Travis Bourgeois, made a comment to White along the lines that White "thought [she] was so perfect"; that Bourgeois was promoted over White to a Continuing Unit Manager position; that Allgood at one point told White that he would have to "learn to trust her again"; that when White asked a co-worker for a knife to cut a piece of cake, the co-worker pointed the knife at her with a jabbing motion and made a joking remark; that GEICO discharged two African-American employees under White's supervision; that White was omitted from a fellow manager's peer review; that she was the subject of an email chain that criticized her management style; that GEICO compromised White's anonymity when she made an ethics complaint about a branch manager; that GEICO requested that she cancel her Kentucky adjuster's license; that when she first became eligible for the Continuing Unit Manager position, her supervisor, Randy Thompson, spoke to her rarely; and that her performance ratings dropped around that time and Thompson placed her on a performance review plan.

No. 10-31105

## II.

Soon after her transfer to the Georgia claims unit, White formalized an Intake Questionnaire with the Equal Employment Opportunity Commission ("EEOC") in which she alleged that she had been subjected to discrimination on the basis of her race (African-American) and sex (female), as well as retaliation, by GEICO. On November 13, 2008, the EEOC provided a Dismissal and Notice of Rights to White and GEICO, informing them that the EEOC was dismissing White's Charge and providing White with notice of her right to sue under Title VII within 90 days of the receipt of the EEOC notice.

White timely filed her suit against GEICO in the district court. In her Amended Complaint, White alleged violations of Title VII and the Louisiana Employment Discrimination Laws. The district court granted GEICO's motion for summary judgment as to all of White's claims, and entered judgment in favor of GEICO. This appeal followed.

Although White originally claimed that she was the target of retaliation as well as race-based and sex-based discrimination (in the form of disparate treatment and harassment), on appeal, she has abandoned her retaliation and sex-based discrimination claims. White has also abandoned all of her claims under Louisiana state law, leaving only the Title VII race-based disparate treatment and hostile work environment claims for this court's review.

## III.

This court reviews a grant of summary judgment *de novo*.[2] Summary judgment is proper only when the movant can demonstrate that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law.[3] A genuine issue of material fact exists if a reasonable jury could enter

---

[2] *See Mack v. City of Abilene*, 460 F.3d 547, 555 (5th Cir. 2006); *Gonzales v. Denning*, 394 F.3d 388, 391 (5th Cir. 2004).

[3] *See Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001).

No. 10-31105

a verdict for the non-moving party.[4]   To defeat a properly pled motion for summary judgment, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."[5]   The court must resolve factual controversies in favor of the nonmoving party.[6] However, the nonmoving party cannot satisfy its burden merely by establishing "some metaphysical doubt as to the material facts,"[7] by "conclusory allegations" in affidavits,[8] or "by only a 'scintilla' of evidence."[9]

## IV.

## A.

We first consider White's race-based disparate treatment claim.  Title VII race discrimination claims are evaluated under the *McDonnell Douglas* burden-shifting framework.[10]  Under that framework, a plaintiff must establish that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some other adverse employment action; and (4) was replaced with someone outside her protected group or was treated less favorably than other similarly situated employees outside the protected group.[11] If the plaintiff makes this prima facie showing, the burden shifts to her

---

[4] *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

[5] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

[6] *See id.*

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[8] *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

[9] *Little*, 37 F.3d at 1075 (quoting *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)).

[10] *McDonnell Douglas v. Green*, 411 U.S. 792, 802-04 (1973).

[11] *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (per curiam).

employer to articulate a legitimate, non-discriminatory reason for the adverse employment action.[12]  "The employer's burden is only one of production, not persuasion, and involves no credibility assessment."[13]    If the employer articulates a valid reason for the adverse employment action taken against the plaintiff, "the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose."[14]

Although the plaintiff's prima facie burden in a Title VII disparate treatment case is "not onerous,"[15] White fails to meet this burden.  It is undisputed that White is a member of a protected class and that she was qualified for her previous position.  She has thus fulfilled the first two prima facie requirements. Because the person who replaced White as Continuing Unit Manager in the Louisiana claims unit was Caucasian,[16] White likely also satisfies the fourth element of the prima facie standard. White's claim fails, however, because she cannot demonstrate that she suffered any adverse employment action.

White claims that GEICO took an adverse employment action against her when the company transferred her to the Georgia claims unit.  A plaintiff alleging race discrimination in violation of Title VII can establish that the defendant subjected her to an adverse employment action only if the defendant's

---

[12] *Id.* at 557.

[13] *Id.*

[14] *Id.*

[15] *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)

[16] In her brief, White alleges that her "replacement was a white female, Deborah Yates." Appellant's Br. at 28.  The evidence White cites in support of that assertion is her sister Tiffany White's affidavit. *See* R. 3, 1361.  While Tiffany White affirmed that Deborah Yates was White's replacement, she did not specify Deborah Yates's race. *See id.*  However, GEICO does not appear to dispute that Yates is Caucasian.

action was an "ultimate employment decision[]."[17]  The parties do not dispute that a demotion is an adverse employment action and that a transfer is sometimes the equivalent of a demotion.[18]  White correctly notes that "[t]o be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse – such as being less prestigious or less interesting or providing less room for advancement."[19]

The problem for White is that there is no evidence that a Continuing Unit Manager in the Louisiana claims unit holds an "objectively better" position than a Continuing Unit Manager in the Georgia claims unit.[20]  Indeed, at her deposition, White conceded that she was not "demoted."

Nonetheless, White now claims that her transfer was an effective demotion because when she transferred to the Macon office, she had less seniority and experience than the other Continuing Unit Managers in that office.  According to the undisputed deposition testimony of Meredith Rosser, a GEICO Human Resources Manager, seniority is not a factor in promotions at GEICO.  Rather, when comparing two applicants, the company looks at factors such as education and relevant experience.  Rosser testified that if a position is not filled with an internal candidate within three days of posting, the company considers external candidates as well, and Rosser stated that if an external candidate's experience level is as good as or better than an internal candidate's, no extra consideration is given to the internal candidate.

---

[17] *McCoy*, 492 F.3d at 560.

[18] *See Alvarado v. Texas Rangers*, 492 F.3d 605, 613 (5th Cir. 2007).

[19] *Id.* (alteration in original) (quotation marks omitted) (quoting *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)).

[20] *Id.* at 614.

No. 10-31105

White also argues that her transfer was a demotion because Continuing Unit Managers who remained in the Louisiana claims unit were promoted. As GEICO notes, the fact that other managers from the Louisiana claims unit were later promoted is not evidence that White herself had lessened opportunities for advancement. Moreover, GEICO observes that after her transfer to the Georgia claims unit, White was expanded responsibilities over a larger area, which may in fact provide her with greater potential for advancement in the future. While White may have had less experience than the other Continuing Unit Managers in the Georgia claims office when she arrived, that situation could easily change based on further transfers in and out of the unit and White's gaining of more experience. White has submitted no evidence suggesting that upon her transfer to the Georgia unit, her "opportunities for career advancement" were circumscribed.[21]

It is undisputed that White's Continuing Unit Manager position in the Georgia claims unit requires the same level of skill, job responsibilities, and accountability as her prior position as Continuing Unit Manager in the Louisiana claims unit, and there is no evidence that White's current position is viewed as less prestigious or less desirable by GEICO employees. For those reasons, and because there is no evidence that White's transfer affected her opportunities for career advancement, White's situation is distinguishable from the cases in which this court found that a transfer constituted a demotion.[22]

---

[21] *Alvarado*, 492 F.3d at 614.

[22] *See, e.g.*, *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996) (holding that a transfer to night patrol from the Intelligence Unit was a demotion where "evidence revealed that the Intelligence Unit positions were more prestigious, had better working hours, and were more interesting than night patrol" and the "few officers voluntarily transferred from the Intelligence Unit to night patrol and other officers had been so transferred as punishment"); *Click v. Copeland*, 970 F.2d 106, 110 (5th Cir. 1992) (holding that a transfer was a demotion where there was testimony that few people transferred voluntarily from jobs in the plaintiff's prior division to jobs in the plaintiff's new division;"'everybody' view[ed] a transfer from [the plaintiff's new division] to [the prior division] as a promotion"; and the two departments had

No. 10-31105

White testified at her deposition that she did not perceive her transfer as a demotion. But even if she did, her subjective perception is irrelevant.[23] The undisputed facts establish that the "objective qualities" of the Continuing Unit Manager position in the Georgia claims unit are indistinguishable from the qualities of the same position in the Louisiana claims unit. No reasonable jury could find that White's transfer was an adverse employment action.[24]

Because White cannot satisfy her prima facie burden, the district court correctly granted summary judgment for GEICO on White's Title VII race-based disparate treatment claim, and we need not reach the other arguments raised by the parties with regard to that claim.

**B.**

To establish a Title VII violation based on race discrimination creating a hostile working environment, a plaintiff must prove: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was race-based; and (4) the harassment affected a term, condition, or privilege of employment.[25] If her alleged harasser was a coworker rather than a supervisor, the plaintiff must also prove that her employer knew or should have known about the harassment and failed to take prompt remedial action.[26] For race-based harassment to affect a term, condition or privilege of employment, it must be "'sufficiently severe or pervasive to alter

---

different seniority systems).

[23] *Alvarado*, 492 F.3d at 614.

[24] *Id.*

[25] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

[26] *Id.*

the conditions of the victim's employment and create an abusive working environment.'"[27]

To determine whether harassment is so severe or pervasive that it alters the conditions of the plaintiff's employment, this court considers a number of factors: "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating (or whether it is a mere offensive utterance), and whether it unreasonably interferes with the victim's work performance."[28] As this court has previously noted, the Supreme Court has held that "Title VII . . . is not a 'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"[29] While GEICO forcefully argues that White did not properly exhaust her hostile work environment claim before the EEOC and that most of her claims of harassment in any case were untimely, we need not reach those questions because White's hostile work environment claim clearly fails on the merits.[30]

---

[27] *Harris v. Forklift Systems, Inc.* 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)).

[28] *Harris*, 510 U.S. at 21.

[29] *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

[30] Insofar as GEICO argues that the district court erred in reaching the merits of White's claims without first finding the claims timely and properly exhausted, GEICO is incorrect. *See, e.g.*, *Goring v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. College*, 414 F. App'x 630, 633 n.4 (5th Cir. 2011) (unpublished) (stating, that "th[e] [plaintiff's hostile work environment] claim [wa]s wholly unsupported by the summary judgment evidence regardless of the time frame considered, as the district court correctly held" (internal citation omitted)); *Sabzevari v. Reliable Life Ins. Co.*, 264 F. App'x 392, 394 (5th Cir. 2008) (unpublished) ("We need not decide [the exhaustion] issue. Even if we assume that Sabzevari has exhausted his administrative remedies, summary judgment on the failure-to-promote claim is proper because Reliable has articulated a legitimate, nondiscriminatory reason for promoting Dixon, and Sabzevari has failed to raise a genuine issue of material fact as to whether this reason is a pretext for discrimination.").

No. 10-31105

Most of the incidents alleged by White, while they "might cause offense or indicate strife" between White and her coworkers or supervisors, are not evidence of race-based harassment.[31] The record contains evidence of only a few incidents that reasonably could be characterized as race-based: Allgood's alleged reference to an African-American client as a "nigger" in White's presence; Allgood's references to the set-up of the Metairie office as "ghetto" or a "FEMA trailer"; and Allgood's comment that he knew Johnson "always wanted to be a white female."[32]   Those incidents do not rise to the level of severity or pervasiveness required to support a hostile work environment claim.  None of them involved physically threatening or humiliating conduct, as opposed to mere offensive utterances; Allgood's alleged use of the term "nigger" and his comment to Johnson were isolated remarks; the "nigger" comment was not directed at White and White only heard about the remark to Johnson;[33] and while Allgood's

---

[31] *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 F. App'x 104, 107 (5th Cir. 2009) (unpublished) (citing *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999)); *see Faragher*, 524 U.S. at 788 (explaining that Title VII is not a "general civility code").

[32] Although White's brief includes two other allegations of race-based remarks by colleagues, neither of those allegations affects our analysis of her hostile work environment claim. First, White claims, based on the affidavit of a former coworker, that when she was out of the office "members of the management team and other office personnel referred to her as 'Sasquatch.'"  Because there is no evidence that White was aware of the remarks made behind her back, those alleged comments could not have contributed to a hostile work environment. *See, e.g.*, *Cottrill v. MFA, Inc.*, 443 F.3d 629, 636-37 (8th Cir. 2006) (collecting cases); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1522 (11th Cir. 1995) (holding that alleged statements to third-parties did not substantiate a hostile work environment claim where "there was insufficient information as to when the statements were made, how knowledge of them was acquired, and when [the plaintiff] was informed of them (if she was)").  Second, White alleges that she and her sister were referred to as "the White girls" in a way that "called into question [the sisters'] racial identity."  However, no deposition testimony or other evidence in the record supports that allegation. Unsubstantiated assertions are insufficient to create a genuine issue of material fact. *See QT Trading, L.P. v. M/V Saga Morus*, 641 F.3d 105, 111 (5th Cir. 2011).

[33] *Cf. Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. Tex. 2005) (holding that the evidence was insufficient to support the plaintiff's sex-based hostile work environment claim because, even though much of the complained-of conduct was "boorish and offensive," most of it was not personally experienced by the plaintiff).

11

use of the terms "ghetto" and "FEMA trailer" may have been "racially inappropriate,"[34] the record does not indicate when Allgood used those terms or how often White heard him describe the Metairie office set-up in that way.

The race-based comments alleged by White "pale in comparison, both in severity and frequency," to the kinds of verbal harassment that this court and other circuits have held would support a Title VII hostile work environment claim.[35]    Moreover, White has offered no evidence that any of the comments interfered with her "work performance."[36]    White has not provided evidence of conduct so "extreme" as to "amount to a change in the terms and conditions of

---

[34] *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) (recognizing that a supervisor's reference to inner-city children as "ghetto children" was "perhaps racially inappropriate").

[35] *Id.* at 348. *Compare Walker v. Thompson*, 214 F.3d 615, 619-22 (5th Cir. 2000) (holding that a hostile work environment claim survived summary judgment where evidence demonstrated years of inflammatory racial epithets, including "nigger" and "little black monkey"); *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1266 (7th Cir. 1991) (holding that the plaintiff survived summary judgment where the plaintiff was subjected to "nigger jokes" for a ten-year period and the plaintiff's workstation was adorned with "a human-sized dummy with a black head"); *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 182 (4th Cir. 2001) (reversing summary judgment where the plaintiff suffered "incessant racial slurs" including "nigger" and "dumb monkey"); *with Turner*, 476 F.3d at 348 (finding that the evidence was insufficient to establish a hostile work environment where a supervisor's comments about inner-city "ghetto children" ceased upon plaintiff's request, and the supervisor's other arguably racially offensive comments were "isolated incidents"); *Harrington v. Disney Reg'l Entm't, Inc.*, 276 F. App'x 863 (11th Cir. 2007) (unpublished) (holding that the only racially offensive conduct the plaintiff complained of, "being called 'ghetto' [by several white colleagues and a manager] and once or twice overhearing co-workers being described as monkeys, was not pervasive enough to alter [the plaintff's] conditions of employment").

[36] *Faragher*, 524 U.S. at 788; *see, e.g.*, *Johnson v. TCB Constr. Co.*, 334 F. App'x 666, 671 (5th Cir. 2009) (unpublished) (finding insufficient evidence to establish a racially hostile work environment where a supervisor's comment that the plaintiff was just "like a damn nigger" was isolated; there was no evidence of the objective effect of that comment on the plaintiff's work performance; and although there was evidence that the supervisor frequently used the term "nigger," those other comments were not uttered in the plaintiff's presence and there was no evidence that they affected the plaintiff's job).

No. 10-31105

her employment."[37]  The district court correctly concluded that the evidence in the record was insufficient to support a race-based hostile work environment claim and properly granted GEICO's motion for summary judgment with regard to that claim.

## V.

Because the district court correctly determined that there was not sufficient evidence for a reasonable jury to find for White on the Title VII claims, it also correctly determined that White's claims for punitive damages could not succeed.[38]  We are persuaded that there are no genuine issues of material fact and that the district court did not err in granting summary judgment on the claims White has challenged here.

AFFIRMED.

---

[37] *Faragher*, 524 U.S. at 788.

[38] We note that, contrary to White's contention, the district court applied the proper standard with regard to the facts, drawing "[a]ll reasonable inferences . . . in favor of the nonmoving party." *White v. Gov't Emps. Mut. Ins. Co.*, Civil Action No. 09-2747, 2010 WL 3943588, at *5-*6 (E.D. La. Oct. 4, 2010).