**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

No. 18-50448

United States Court of Appeals
Fifth Circuit

**FILED**

June 13, 2019

Lyle W. Cayce
Clerk

KENESHIA WALLACE,

     Plaintiff - Appellant

v.

SETON FAMILY OF HOSPITALS,

     Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:16-CV-1320

Before STEWART, Chief Judge, and DAVIS and ELROD, Circuit Judges.

PER CURIAM:*

On January 27, 2016, Seton Family of Hospitals ("Seton") terminated Keneshia Wallace's ("Wallace") employment. Wallace was a Seton employee for a little over six months. Wallace asserts that she was terminated because of her race and in retaliation for complaining about racial comments directed at her. Wallace alleges that Linda Brown ("Brown"), her African-American supervisor, directed racial comments towards her regarding her mannerisms

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and personality. Wallace also alleges that after she spoke with Brown's supervisor Susanne Cadena ("Cadena") about these comments, Brown retaliated against her in different ways and ultimately decided to terminate her. At issue is whether Wallace was terminated based on her race and in retaliation for complaining about Brown's racial comments and Brown's acts of retaliation. For the reasons below, we REVERSE the district court's grant of summary judgment in favor of Seton and REMAND for further proceedings consistent with this opinion.

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND
### a.  Factual Background

Wallace is an African-American woman who was employed at Seton as a Patient Access Representative ("PAR") from July 20, 2015 until January 27, 2016. On January 27, 2016, Seton allegedly terminated Wallace's employment because she had attendance issues and conflicts with three of her co-workers while she was in the introductory phase of her employment.

Throughout Wallace's time at Seton, she had conflicts with three of her co-workers, Illeana Flores ("Flores"), Jennifer Trevino ("Trevino), and Cheryl McCaskill ("McCaskill"). The issues relevant to Wallace's claims began in October 2015, when Wallace asked to meet with Brown to discuss allegations that she was being bullied by Flores, Trevino, and McCaskill. On October 23, 2015, Brown initially met with Wallace and her three co-workers, but then dismissed the three co-workers and had an independent meeting with Wallace. The subject matter of this independent meeting is in dispute. Wallace alleges that after her three co-workers were asked to leave the meeting, Brown made racially-charged statements, stating that Wallace had a "home-girl personality" and that Wallace's mannerisms were "too black." Brown also allegedly stated that she had a problem with the "black community" because

they are "too ghetto." Further, Brown also allegedly stated that if Wallace repeated what Brown stated, she would deny making the comments.

After the meeting, Wallace emailed Brown because she still felt "uneasy" about what was said during the meeting, noting that Brown stated that she had a "homegirl personality." Brown responded to the email stating that it "was not that [Wallace] had a 'home-girl personality,'" but that others perceive this from Wallace and that she should be "aware of that perception." Cadena and Elena Rojo ("Rojo") from Human Resources ("HR") were copied on this email. At some point directly after Wallace's initial meeting with Brown, she allegedly had a meeting with Cadena and Brown together, but Wallace does not specifically remember when this meeting occurred.

On November 5, 2015, Wallace met with Cadena to discuss the alleged bullying from her three co-workers and Brown's racial statements. Whether Brown was in this meeting is disputed. Cadena's notes from the meeting reference Brown's alleged retaliation against Wallace and Brown's alleged "home-girl personality" comment. Wallace testified that she felt as if Brown was commenting on her "work ethic" in retaliation for complaining about Brown's racial comments, specifically her "home-girl personality" comment.

In December 2015, Wallace met with Cadena for a second time, allegedly regarding Brown's retaliation.[1] A December 8, 2015 email states that Cadena, Wallace and Brown were scheduled to meet on December 10, 2015. In this meeting, Brown allegedly said that she could not handle Wallace. After this meeting, Wallace contends that Brown said that she was going to "get her in

---

[1] A December 7, 2015 email states that Wallace wanted to meet with Cadena regarding Flores's and Trevino's use of profanity in the office and does not mention wanting to discuss Brown's alleged retaliation.

3

trouble" because Wallace got Brown in trouble with Cadena.[2] Brown denies making this threat.

On January 8, 2016, Wallace received a Counseling Report (a formal disciplinary letter) for her attendance issues, citing several tardies and several unscheduled absences. She had eight tardies and five unscheduled absences as of the time of the January 2016 Counseling Report.[3] Wallace violated Seton's policy that within the first six months of an employee's tenure with the company—their introductory period—they are allowed no more than two unscheduled absences, and not more than three tardies in any three-month period. The Counseling Report specifically noted that Wallace violated Section 300.14 of Seton's Policy, regarding an unscheduled, unauthorized absence not covered by paid-time off ("PTO"). *Id.* However, she disputes that this absence should count against her since she was told to stay home by the Occupational Health Department due to her being sick.

In the time between Wallace receiving her Counseling Report and being terminated in late January 2016, she was not tardy or absent. But Flores and Trevino filed complaints with Brown regarding specific actions taken by Wallace at work during this time.

Rojo testified that Wallace was terminated due to her attendance and her conflicts with her co-workers while being in her introductory period. But she testified that during the termination meeting Wallace was only told that she was not a "good cultural fit" for Seton, that she was an "at-will" employee, and that her termination was like an "outsource." There is no written

---

[2] There is no evidence that Brown was ever disciplined for making allegedly racially charged statements.

[3] Wallace's monthly performance reviews from July 2015 to December 2015 show 14 tardies and 5 absences. However, we will focus specifically on the number of tardies and unscheduled absences for which she received discipline.

No. 18-50448

documentation to corroborate Rojo's testimony because she did not complete a "PeopleSoft Form"[4] after consulting with Seton's legal counsel. There is no evidence that Rojo or Brown told Wallace that she was terminated because of her attendance or conflict issues which occurred while she was in her introductory period. Additionally, there is conflicting testimony as to whether Brown made the ultimate decision to terminate Wallace, or whether it was Rojo's and HR's decision.

Wallace began her employment on July 20, 2015, thus, her introductory period ended on January 20, 2016. Wallace was terminated outside of her introductory period, but Rojo testified that Wallace was considered to have been inside her introductory period when she was terminated. Later, in December 2017, Rojo provided an affidavit which stated that Wallace was terminated because of her attendance issues and conflicts with her co-workers and because these issues had occurred "while still in her introductory period."

### b.  Procedural Background

On March 11, 2016, Wallace filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission. The EEOC gave her a Notice of Right to Sue in September 2016. *Id.* In December 2016, Wallace timely filed suit in the district court. Wallace alleges that Seton unlawfully retaliated against her and terminated her on the basis of race, in violation of Texas Labor Code § 21.001, *et seq.* (1995)[5]; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*; and 42 U.S.C. § 1981.

In December 2017, Seton filed a motion for summary judgment on all of Wallace's claims. Wallace filed a motion for partial summary judgment on

---

[4] PeopleSoft is a human resource management system.
[5] Also known as the Texas Commission on Human Rights Act ("TCHRA").

5

Seton's liability for her retaliation claim under all three statutes, and also Seton's three affirmative defenses. The district court granted Seton's motion and denied Wallace's motion. Wallace timely appealed and only challenges the district court's grant of summary judgment in favor of Seton.

## II.    ANALYSIS

This court reviews a district court's grant of summary judgment de novo, applying the same standard as the district court. *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (citation omitted). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue [of] material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(a)). "The evidence of the non[]movant is to be believed, and all justifiable inferences are to be drawn in [his or her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)). Not every factual dispute between the parties will prevent summary judgment; rather, the disputed facts must be material and have the potential to affect the outcome of the suit under the substantive law governing the issue. *See id.* A plaintiff's mere beliefs, conclusory allegations, speculation, or unsubstantiated assertions are insufficient to survive summary judgment. *See, e.g., Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997) (citation omitted).

### A.

"[Wallace] can prove intentional discrimination through either direct or circumstantial evidence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). If a plaintiff only offers circumstantial evidence then the modified *McDonnell Douglas* burden-shifting framework applies. *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (citing

No. 18-50448

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Wallace concedes that she seeks to establish her claims through circumstantial evidence. Claims for race discrimination under Title VII, the Texas Labor Code, and Section 1981 are generally analyzed under the same Title VII framework. *See Jackson v. Watkins*, 619 F.3d 463, 466 (5th Cir. 2010) (Title VII and 42 U.S.C. § 1981); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 24 (Tex. 2000) (TCHRA).

Under the modified *McDonnell Douglas* burden-shifting framework, Wallace must first establish a prima facie case of discrimination. *Burrell*, 482 F.3d at 411. Once she establishes a prima facie case, Seton must then articulate a "legitimate, non-discriminatory reason for its decision to terminate [her]." *Id.* (citation omitted). If Seton meets this burden of production, then Wallace must offer "sufficient evidence to create a genuine issue of material fact that either (1) [Seton's] reason[s] [are] a pretext or (2) that [Seton's] reason[s], while true, [are] only one of the reasons for its conduct, and another 'motivating factor' is [Wallace's] protected characteristic." *Id.* (citation omitted).[6]

a) *Prima Facie Case*

To establish a prima facie case of racial discrimination, Wallace must present evidence that she "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside h[er] protected group or was treated less favorably than other similarly

---

[6] At this third step, the test is different for claims under the TCHRA: Wallace must establish that her race was a "motivating factor" for her termination. *See Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001); Tex. Lab. Code Ann. § 21.125 (1997) ("Except as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that race, color, sex, national origin, religion, age, or disability was a motivating factor for an employment practice[.]").

situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).

The parties only dispute the fourth prong of Wallace's prima facie case. Wallace was not replaced by someone outside her protected group; thus, she must present evidence of a similarly situated employee who was treated differently than her. Similarly situated employees are called "comparators" under Title VII jurisprudence. For a comparator to be deemed similarly situated, the employees being compared should "h[o]ld the same job or responsibilities, share[] the same supervisor or ha[ve] their employment status determined by the same person and have essentially comparable violation histories." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (footnotes omitted). Additionally, "the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* (citation omitted). However, "nearly identical" should not be interpreted to mean "identical." *See id.* "Each employee's track record at the company need not comprise the identical number of identical infractions, albeit these records must be comparable." *Id.* at 261. "As the Supreme Court has instructed, the similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out[.]" *Id.* (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)).

Wallace identifies four possible comparators, Trevino, Flores, McCaskill, and Maggaly Saccamondo ("Saccamondo"). These individuals are non-African-American PARs. to Trevino, Flores, and McCaskill, Wallace had documented conflicts with them and they allegedly had conflicts with other employees, yet Wallace was the only employee terminated for having conflicts with co-workers. Wallace, Trevino, Flores, and McCaskill were all supervised by Brown, the major difference being that Trevino, Flores, and McCaskill were

not in their introductory period. Seton asserts that because they were not in their introductory period, they cannot be adequate comparators. But Seton Policy establishes that an employee's introductory status only matters for purposes of establishing the maximum number of unscheduled absences they can have during their introductory period.[7] Wallace, Trevino, Flores, and McCaskill had comparably serious violations as a result of their conflicts with each other and other employees.

As to Saccamondo, who was also supervised by Brown, she had more egregious attendance issues than Wallace during the same time period (thirty-nine tardies, and five unscheduled absences). Seton also argues that she cannot be a comparator because she was not in her introductory period, but Seton's tardy policy is the same for both introductory and permanent employees. There is no evidence regarding whether Saccamondo was disciplined for her attendance issues; but, viewing her monthly performance report for the same time period, we know that she was not terminated. Wallace and Saccamondo had comparably serious attendance issues, specifically regarding their numbers of tardies.

We agree with Seton that a reasonable jury could conclude that an employer could properly scrutinize an introductory employee closer than a longer-term "permanent" employee and be inclined to view a violation by an introductory employee more seriously. So, we conclude that for this reason a material question of fact is presented as to whether the longer-term

---

[7] For introductory employees, two or more unscheduled absences during their introductory period constitutes excessive absenteeism. Whereas for permanent employees, the standard is three or more in any three-month period. *Id.* Being tardy more than three times in any three-month period is considered excessive tardiness for both introductory and permanent employees. *Id.* On December 14, 2015, Seton changed its tardy policy to a maximum of two tardies per pay period.

employees—Trevino, Flores, McCaskill, and Saccamondo—were proper comparators for the plaintiff. We did not find a precedential case directly on point, but whether two employees are "similarly situated" generally presents a question of fact for the jury. *See Perez v. Tex. Dep't of Crim. Justice, Institutional Div.*, 395 F.3d 206, 214-15 (5th Cir. 2004); *George v. Leavitt*, 407 F.3d 405, 414 (D.C. Cir. 2005) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)).

b) *Legitimate Non-Discriminatory Reason*

Assuming that Wallace has established a prima facie case of racial discrimination, Seton avers that Wallace was terminated because of her ongoing conflicts with multiple co-workers and her attendance issues, both of which occurred during her introductory period.

c) *Pretext or Motivating Factor*

To satisfy her burden of proof and to defeat Seton's motion for summary judgment, Wallace must offer sufficient evidence that either (1) Seton's articulated reasons are a pretext for discrimination, or (2) Seton's stated reasons, while true, are only some reasons for its conduct, and discrimination is another motivating factor. *See Autry v. Fort Bend Ind. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013).

To establish pretext, "[Wallace] must substantiate h[er] claim [] through evidence demonstrating that discrimination lay at the heart of [Seton's] decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). Wallace "must rebut each non[-]discriminatory reason articulated by [Seton]." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Wallace*, 271 F.3d at 220). Wallace must rebut each reason by "produc[ing] substantial evidence of pretext." *Wallace*, 271 F.3d at 220 (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402 (5th Cir. 2001)). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men [or women] in the

exercise of impartial judgment might reach different conclusions." *Laxton*, 333 F.3d at 579 (citation and quotation marks omitted). Wallace can establish pretext by (1) showing disparate treatment or by (2) showing that Seton's proffered explanation is false or unworthy of credence. *Id.* at 578 (citing *Wallace*, 271 F.3d at 220); *see also Vaughn v. Woodforest Bank*, 665 F.3d 632, 637-40 (5th Cir. 2011).

Seton asserts that Wallace was fired for the cumulative effect of her attendance issues and her conflicts with her co-workers which occurred during her introductory period. Seton does not assert that each reason was an independent reason for terminating Wallace; therefore, we must treat Seton's reasons for terminating Wallace as a single justification.[8] *Compare Laxton*, 333 F.3d at 580 (treating the employer's reasons for termination as a single justification given the employer's proffer that it was the "cumulative effect" of several violations that led to the plaintiff's termination), *with Wallace*, 271 F.3d at 222 (treating the employer's reasons for termination as independent reasons, given that each reason could serve as a basis for termination).

Wallace has already provided evidence of her disparate treatment through her prima facie case which establishes that there is a material question of fact regarding whether Trevino, Flores, McCaskill, and Saccamondo are adequate comparators. We analyze disparate treatment at the pretext phase in the same manner that we analyzed Wallace's proposed comparators. *See Wallace*, 271 F.3d at 221 (holding that in order to show disparate treatment, a plaintiff must provide sufficient evidence to establish "that the misconduct for which she was discharged was nearly identical to that engaged in by an employee not within her protected class whom the company

---

[8] Rojo testified that Wallace's attendance issues alone were not the reason for her termination, and that it was fair to say that "but for [Wallace's] issue involving conflicts with coworkers, she would not have been fired."

retained." (quoting *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)) (alterations omitted)). Therefore, because Wallace has already presented evidence of disparate treatment, she has also established that there is a material question of fact regarding whether Seton's proffered justification is pretextual. *Laxton*, 333 F.3d at 580 n.2 ("[A] plaintiff need only bring evidence that enables the jury to disbelieve that the employer's proffered justification truly motivated the adverse employment action." (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000))).

A reasonable jury could find that based upon Wallace's prima facie case and her evidence of pretext,[9] racial discrimination lay at the heart of Seton's decision to terminate her. *See Price*, 283 F.3d at 720; *Reeves*, 530 U.S. at 153-54 (holding that the district court properly sent the case to the jury because the plaintiff established a prima facie case of discrimination, produced enough evidence for a jury to reject the employer's reasons for termination, and provided additional evidence of discriminatory animus). Therefore, we

---

[9] Wallace also presents evidence of Brown's alleged racially-charged statements towards her, from which a reasonable jury could also infer pretext. *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 225 n.9 (5th Cir. 2000) (holding that oral statements can be evidence of pretext). We note that the district court applied the wrong test—the "stray remarks" direct evidence test—to Brown's race-based comments, which were only offered as circumstantial evidence. "To be relevant evidence considered as part of a broader circumstantial case [of discrimination], 'the comments must show: (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker.'" *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475-76 (5th Cir. 2015) (quoting *Squyres v. Heico Cos.*, 782 F.3d 224, 236 (5th Cir. 2015)) (alteration added). Brown's comments demonstrate racial animus. *See White v. Gov't Emps. Ins. Co.*, 457 F. App'x 374, 381 (5th Cir. 2012) (per curiam) (unpublished) (holding that the manager's references to a particular office as "ghetto" was race-based). Additionally, Brown admitted that she had a role in terminating Wallace. Whether Brown had the exclusive authority to terminate Wallace as Rojo testified is a disputed question of material fact. Accordingly, Brown's comments are relevant circumstantial evidence that Seton's proffered justification for terminating Wallace is pretextual.

No. 18-50448

REVERSE the district court's grant of summary judgment to Seton regarding Wallace's racial discrimination claim and REMAND for further proceedings.[10]

B.

As to Wallace's retaliation claims under both federal and state law, we utilize the same Title VII framework, except to establish pretext, Wallace must establish that "but for" her engagement in protected activity, she would not have been terminated. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *see also Jackson,* 619 F.3d at 466; *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487-88 (5th Cir. 2004) (holding that "but for" causation is the standard for retaliation under the TCHRA) (citing *Quantum*, 47 S.W.3d at 479).

Wallace seeks to establish her retaliation claim through circumstantial evidence, thus we must utilize the *McDonnell Douglas* framework. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003), *overruled on other grounds by Smith v. Xerox Corp.*, 602 F.3d 320, 330 (5th Cir. 2010).

a) *Prima Facie Case*

To state a prima facie case of retaliation Wallace must show that "(1) [s]he engaged in conduct protected by Title VII; (2) [s]he suffered a materially adverse [employment] action; and (3) a causal connection exists between the protected activity and the adverse action." *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 269 (5th Cir. 2015). Seton only contests the third element of Wallace's prima facie case.

Wallace's protected activities include two complaints regarding Brown's use of racially charged language toward her, one in an October 23, 2015 email to Brown, and the other in a November 5, 2015 meeting with Cadena. Wallace

---

[10] Because we find that Wallace has provided sufficient evidence to establish that there is a material question of fact regarding whether she was terminated because of her race, she also satisfies the motivating factor causation standard for the TCHRA.

also testified that there was a second meeting with Cadena in late November or early December regarding Brown's alleged retaliation, after which Brown threatened to get her "in trouble." These three instances all undisputedly constitute protected activity. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007) ("[A]n employee has engaged in protected activity if she has 'opposed any practice made an unlawful employment practice [under Title VII].'") (alterations in original); *Aryain v. Wal-Mart Stores, Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (holding that the plaintiff's complaint to her supervisor constituted protected activity (citing *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002))).

To establish the causation prong of her prima facie case, Wallace does not need to "prove that her protected activity was the sole factor motivating the employer's challenged decision[.]" *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002) (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996)).[11]

The proximity of the adverse employment action to the protected activity can be a factor in establishing the causal connection needed to substantiate a prima facie case of retaliation. *See McCoy*, 492 F.3d at 561 n.28. For temporal proximity to alone establish prima facie causation, it is required to be "very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (listing cases); *see also Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) (citing *Breeden*, 532 U.S. at 273). We have cited with approval a district court case noting that four months was sufficiently close in time to satisfy the causal connection element of a plaintiff's prima facie case for summary

---

[11] *See also De Anda v. St. Joseph Hosp.*, 671 F.2d 850, 857 n.12 (5th Cir. 1982) ("[I]t is possible [that the] plaintiff . . . need only introduce enough evidence, direct or indirect, to show a causal link, i.e., that without some explanation from the defendant it is more likely than not 'that such actions were based on a discriminatory criterion illegal under the [Civil Rights] Act [of 1964].'") (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 576 (1978))).

judgment purposes. *See Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (citing *Weeks v. NationsBank, N.A.*, No. CIV.A.3:98–CV–1352M, 2000 WL 341257, at *3 (N.D. Tex. Mar. 30, 2000)). In this case, the proximity between Wallace's protected activities and her termination was less than four months.

A reasonable jury could find that Wallace's complaints were a causal factor in the decision to terminate her. Brown had an admitted role in terminating Wallace; thus, a reasonable jury could also find Brown's alleged threat that she was going to get Wallace in trouble exemplifies a retaliatory motive. *See Powell v. Rockwell Int'l Corp.*, 788 F.2d 279, 283 (5th Cir. 1986) (holding that company officials' threats that the plaintiff would be "dealt with," among other evidence allows for the inference of possible pretext). Further, Wallace asserts that she has presented evidence that the time between her complaints to Cadena, Brown's threat, and her ultimate termination are close enough to establish that there is a causal link between her complaints and her termination. We agree.

"The standard for establishing the 'causal link' element of the plaintiff's prima facie case [of retaliation under Title VII] is much less stringent [than proving ultimate but-for causation]." *Long*, 88 F.3d at 305 n.4. Thus, viewing the evidence in the light most favorable to Wallace, we hold that Wallace has presented sufficient evidence to establish that there is a material question of fact as to the alleged causal link between Wallace's protected activities and her allegedly retaliatory termination.

b) *Legitimate Non-Retaliatory Reason*

Seton proffers the same justification for Wallace's termination as above: that Wallace was terminated because she had attendance issues and conflicts with co-workers while she was in her introductory period of employment.

c) *Pretext*

"The proper standard of proof on the causation element of a Title VII retaliation claim is that the adverse employment action taken against the plaintiff would not have occurred 'but for' her protected conduct." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 608 (5th Cir. 2005) (quoting *Pineda*, 360 F.3d at 487). Temporal proximity alone is not enough to establish but-for causation. *Strong*, 482 F.3d at 808 ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but-for causation."); *see also Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 405 (5th Cir. 2013) (citing *Strong*, 482 F.3d at 808). Wallace must provide specific evidence of but-for causation. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999) ("[T]he ultimate issue on summary judgment is whether [the plaintiff] produced evidence which could support a finding that she would not have been fired in the absence of her having engaged in protected conduct." (citing *Long*, 88 F.3d at 304 n.4)). Additionally, "[Wallace] must rebut each non[-retaliatory] reason articulated by [Seton]." *Laxton*, 333 F.3d at 578 (citing *Wallace*, 271 F.3d at 220).

Because Wallace's retaliation claim is governed by the same analysis as her racial discrimination claim, Wallace may establish pretext and rebut Seton's reasons in two ways: (1) by showing disparate treatment or (2) by showing that Seton's proffered explanation is false or unworthy of credence. *Id.*[12] However, she must still provide sufficient evidence to establish that she would not have been terminated but for her engaging in protected activities.

---

[12] *See Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001) ("The framework for analyzing a retaliation claim is the same as that used in the employment discrimination context."); *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) (same).

As stated above, we treat Seton's reasons for terminating Wallace as a single justification. Wallace attacks the credibility of Seton's cumulative theory for terminating her, casting doubt on whether Seton's proffered justification for terminating her was its true reason. Wallace has specifically rebutted two of Seton's proffered interdependent reasons for her termination—Seton's conflict and attendance reasons. Wallace has provided evidence that she was treated differently for having conflicts in the workplace and for her attendance issues. Additionally, there is evidence in the record that casts doubt on Seton's interdependent reason regarding Wallace's introductory status. Wallace was treated differently than Jennifer Stroud ("Stroud"). Stroud had similar attendance issues during her introductory period and was ultimately terminated for these issues, but she received different level infractions for her attendance issues than Wallace. Stroud received two Group II offenses which are minor offenses,[13] whereas, Wallace received one Group I offense, which usually is accompanied by termination.

Wallace also provides other evidence of pretext, pointedly, Brown's alleged threat to "get her in trouble," Seton's shifting reasons, and the temporal proximity between her protected activity and her termination. A supervisor's threat that exemplifies a retaliatory motive permits an inference of pretext. *See Powell*, 788 F.2d at 283; *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 363 (5th Cir. 2017) (per curiam) (unpublished) (citing *Powell*, 788 F.2d at 283); *Goudeau*, 793 F.3d at 475-76 (holding that remarks can be circumstantial evidence of intentional discrimination if the comment has a discriminatory animus and it is made by someone who has the power over the employment action). Taking the facts in the light most favorable to Wallace, we assume that

---

[13] Seton Policy states that two Group II offenses in an employee's introductory period leads to termination.

Brown threatened Wallace and this permits an inference that Seton's proffered justification is pretext.

Additionally, Wallace asserts that Seton's reasons for terminating her have shifted over time and therefore provides further evidence of pretext. *See Nall v. BNSF Ry. Co.*, 917 F.3d 335, 347 ("[I]t is well-accepted in employment law . . . that inconsistent explanations and changing requirements undermine a party's credibility."). As explained above, Rojo's testimony as to whether Wallace was in her introductory period has shifted during the pendency of this case. Moreover, Wallace presents evidence that Seton never told her that she was terminated for any attendance or conflict issues occurring during her introductory period. Instead she asserts that Rojo told her that she was not a "good cultural fit", that she was an "at-will" employee, and that her termination was like an outsource. Also, conspicuously absent from the record is any written documentation contemporaneous with Wallace's termination detailing the cause of her termination, which Rojo testified she did not create on the advice of Seton's legal department. Taking the facts in the light most favorable to Wallace, we agree that Seton's shifting reasons create a material question of fact as to whether Seton's enumerated justification for terminating her were pretextual. *See Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 575 (5th Cir. 2003) (holding that the jury was right to infer discriminatory animus given the employer's shifting reasons from the time of the adverse employment action until the case was litigated).

Further, a reasonable jury could infer that Seton's proffered justification is pretextual given the temporal proximity between Wallace's protected activity and her termination. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 240 (5th Cir. 2015) ("The combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary

judgment." (quoting *Evans*, 246 F.3d at 356) (internal brackets and quotation marks omitted)).

Wallace has provided sufficient evidence from which a reasonable jury could infer that but for her engaging in protected activities, she would not have been terminated. Therefore, because there is a material question of fact as to whether Seton's proffered justification for terminating Wallace was the true reason for her termination, we REVERSE the district court's grant of summary judgment on Wallace's retaliation claim in favor of Seton.

## III. CONCLUSION

For the reasons stated above, we REVERSE the district court's grant of summary judgment in favor of Seton and REMAND for further proceedings consistent with this opinion.